# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
June 2, 2014

Lyle W. Cayce
Clerk

12-10586

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MOSES COPPIN; TAMEKA ESTELLE BENNETT,

Defendants - Appellants

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 3:10-CR-345

Before STEWART, Chief Judge, and GARZA and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Moses Coppin and Tameka Bennett appeal a jury verdict finding them guilty on multiple criminal charges. We VACATE Coppin's and Bennett's convictions on Count One for conspiracy. We AFFIRM their convictions on the remaining counts. We REMAND for resentencing.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-10586

## FACTS AND PROCEDURAL HISTORY

Around noon on October 29, 2010, Alicia Madrigal allowed two men in green vests posing as termite inspectors to enter her Dallas townhome. The men left without incident. Later that day, they broke into Madrigal's home. One of the men pointed a silver gun with a wooden handle at Madrigal while the other removed a small safe from her bedroom. The men loaded the safe into a silver Dodge Avenger and drove away.

The resulting police investigation located a neighbor who had recorded the Avenger's license plate number. Police determined that Tameka Bennett had rented the car from Enterprise a few days earlier. Moses Coppin was listed as an additional driver in the rental agreement. The police staked out the local Enterprise rental center on the day the vehicle was to be returned and arrested Coppin when he attempted to return the vehicle. They found a fully-loaded handgun in Coppin's possession that matched Madrigal's description of the one used during the burglary. The police arrested Coppin. On his cell phone police discovered photographs of women wearing Madrigal's jewelry.

Bennett was Coppin's girlfriend at the time of his arrest and had the stolen jewelry in her possession. The day after the arrest, Bennett, who owned a local body shop, told one of her employees, James Collins, that she had to recover Coppin's phone from the police "cause those stupid SOBs have the evidence on the phone and they don't know they have it." Later that day, Bennett visited the county jail and retrieved Coppin's phone from the property room. She then removed the phone's subscriber identity module ("SIM") card. Not long after Bennett left the jail with the cell phone, the lead detective on Coppin's case received a search warrant for the phone. The detective successfully tracked Bennett down and retrieved the phone from her possession. The phone no longer contained the SIM card, but Bennett had not removed the memory card.

2

No. 12-10586

Bennett then reported the day's activities to Coppin, who remained incarcerated in Dallas County Jail, awaiting a detention hearing on an aggravated burglary charge. While they were speaking on the phone, they realized that the cell phone's memory card might also contain evidence. With Coppin on the phone, Bennett contacted Coppin's cell phone provider to ask if the phone's memory could be cleared remotely. She was told that could not be done. In another conversation, Coppin suggested to Bennett that she find someone to claim ownership of the gun in order to avoid a felon-in-possession charge. Bennett, in turn, directly asked Collins to tell the police that the gun was his so that Coppin "wouldn't go to jail." Collins refused.

Not long after Coppin posted bond in state court, the Government filed a criminal complaint against him on November 16, 2010 for being a felon in possession of a weapon and arrested him the next day. On the day of Coppin's arrest, Bennett again approached Collins and suggested that admitting that the gun was his would be "worth a thousand dollars." Collins understood Bennett to be offering him $1,000 to claim that the gun was his. Collins again refused. The district court held a detention hearing on November 18, 2010 and found probable cause to support the criminal complaint. Coppin was detained in federal custody. He was subsequently indicted on the felon-in-possession charge.

While Coppin was being prosecuted for this charge, Bennett had been moving the stolen jewelry between various places in their Dallas home and her body shop in an effort to conceal it from the police. Bennett's daughter, Cabria, contacted the police and reported that Bennett had the stolen jewelry. Cabria secretly arranged with a police officer to leave the jewelry on the front porch of their Dallas home, which was then recovered by the police. Madrigal identified the jewelry as her own and Coppin as one of the burglars. The police then executed a search warrant on Bennett's home and found a loaded revolver

3

under her mattress and two other guns hidden under the floorboards in her closet.

Thereafter, a federal grand jury returned a second indictment, charging Bennett with four criminal counts and Coppin with three counts, including his original felon-in-possession charge. Coppin and Bennett were jointly charged with conspiring to obstruct justice (count one) in violation of 18 U.S.C. §§ 1512(b)(2)(B), 1512(k) and aiding and abetting obstruction of justice (count two) in violation of 18 U.S.C. §§ 1512(b)(2)(B), 1512(c)(1), and 2. Bennett was individually charged with obstructing the due administration of justice (count three) in violation of 18 U.S.C. § 1503(a). Finally, each was individually charged with being a felon in possession of a firearm (counts four and five) in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2).

Coppin and Bennett were found guilty on all counts after a jury trial. The district court sentenced Coppin to imprisonment for 240 months on counts one and two, to be served concurrently, and 120 months on count four, to be served consecutively, for a total of 360 months. Over Coppin's objection, the court enhanced his sentence for his leadership role in the defendants' efforts to conceal the evidence. Bennett was sentenced to a total term of 180 months' imprisonment for all three counts.

Bennett and Coppin individually appeal their convictions on each count, except that Bennett does not appear to challenge the felon-in-possession conviction (count four). Coppin also appeals the district court's enhancement of his sentence for being a leader in an organized criminal activity. The Government reorganizes the multiple, discrete issues raised by Bennett and Coppin into issues related to sufficiency of the second indictment and sufficiency of the evidence. We will discuss the arguments using the Government's reorganization.

No. 12-10586

DISCUSSION

I.   *Sufficiency of Counts One and Two of Indictment (Bennett and Coppin)*

After the Government presented its case in chief, Coppin's counsel moved to dismiss the indictment or for a judgment of acquittal.  He argued that Counts One and Two did not allege all the necessary elements of the charged offenses.  The first omission alleged was of the word "corruptly," which should have appeared in each count.  Counsel also argued that Count One did not make the necessary allegation that Coppin tried to persuade another person to do the criminal act.  Bennett's counsel joined in the motion based on the same objections.  The motion was denied.

On appeal, Bennett and Coppin argue that Counts One and Two failed to include language of the crime with which they were charged, and the omissions deprived them of their constitutional right to be indicted by a grand jury for a felony.  *See United States v. Robinson*, 367 F.3d 278, 281 (5th Cir. 2004).   The Government accepts that the indictment lacked elements of the crimes.  It argues, though, that the omissions were harmless error because at trial, the district court included the omitted language in its charge to the jury.

We start with the recognition that a defendant accused of a felony has a Fifth Amendment right "to be tried upon the charge in the indictment as found by the grand jury."  *United States v. Thompson*, 647 F.3d 180, 184 (5th Cir. 2011).  Even so, when an indictment omits elements of the charged offense, the error may be harmless.  When a guilty verdict is returned despite a deficient indictment, "[a]n otherwise valid conviction will not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt."  *Robinson*, 367 F.3d at 287.   The error is harmless unless it affected the defendant's substantial rights. *United States v. Dentler*, 492 F.3d 306, 310 (5th Cir. 2007)

5

(citing *Robinson*, 367 F.3d at 286-87). We judge the effect on substantial rights in such situations by asking two questions: (1) did the defendant receive sufficient notice from the indictment to understand the crime being charged, and (2) was the defendant harmed by not having a grand jury, as opposed to the prosecutor at trial, make the decision about the missing elements of the offense? *Dentler*, 492 F.3d at 310-11. Relevant to the second factor, a guilty verdict returned by a properly charged petit jury is persuasive evidence that a grand jury would have found probable cause to indict the defendant for the same offense. *Id.* at 311.

We now examine the two counts using these principles.

### A. Conspiracy to Corruptly Persuade Another Person to Conceal Evidence (Count One)

Count One charged Bennett and Coppin with violations of 18 U.S.C. § 1512(k) and § 1512(b)(2)(B). The relevant allegations in that count were that the defendants "conspire[d] together to attempt to conceal and did conceal objects, namely a cellular telephone memory card and telephone contents, and a firearm and jewelry with the intent to impair the objects' availability for use in" the pending criminal proceeding against Coppin. The Government admits the indictment should have charged the defendants with "corruptly persuad[ing] another person" to conceal the evidence. We examine the statutes to understand why those missing words are needed.

The first statutory reference in Count One is to Section 1512(k). It criminalizes conspiracies to commit the substantive offenses enumerated in Section 1512. The second reference is to Section 1512(b)(2)(B). That provision allows conviction of anyone who "knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so . . . with intent to cause or induce any person to (B) alter, destroy, mutilate, or conceal an object

with intent to impair the object's integrity or availability for use in an official proceeding. . . ."

The Government argues that Count One charged the defendants with conspiracy to corruptly persuade another person to conceal evidence because the omitted language was implicit from the citation to Section 1512(b)(2)(B) that was also part of the charge. The Government cites no authority for that proposition, *i.e.*, that the failure to charge that the defendants' actions were directed at a third person is harmless simply due to the indictment's citation to the statute. Perhaps under *Dentler*, it could be said that because Count One referred to Section 1512(b)(2), which requires that a defendant "cause or induce any person" to act in specific ways as set out in four alphabetized subparts (subpart (B) was charged), both defendants would have understood they were being charged with inducing a third person to conceal and not to concealing the objects themselves. Other than the statutory citation, nothing in the language of Count One suggests the relevance of an unnamed third or fourth person to the charge.

On appeal, the Government's brief explains the persuasion it believes was supported by the evidence:

> The government proved that Coppin and Bennett conspired to knowingly corruptly persuade Bennett's daughter, Cambria, and Bennett herself to conceal objects relevant to an official proceeding. . . . Finally, Coppin and Bennett conspired to corruptly persuade Bennett to conceal the SIM card and contents of the memory card from Coppin's phone as well as the jewelry and one of the guns used in the robbery.

The Government argues in part that Bennett and Coppin were shown to have conspired to persuade Bennett herself. The crime, though, is conspiracy between at least Coppin and Bennett to persuade, as the statute states, "another person" to conceal. A conspiracy has three elements: an agreement

7

among individuals to pursue the object of the conspiracy, knowledge of the unlawful object of the agreement, and an overt act undertaken by one of the conspirators toward carrying out the object of the conspiracy. *United States v. Porter*, 542 F.3d 1088, 1092 (5th Cir. 2008).   Certainly, Bennett and Coppin's conspiring to convince Cambria to act would fit the crime.   A conspiracy involves multiple individuals working towards a common goal.   Here the goal was to persuade "another," *i.e.*, someone other than a conspirator.   We cannot accept the government's argument that Bennett should be seen as conspiring with Coppin to convince herself.   Whatever other problems there may be with such an argument, it is clear that Bennett cannot be "another" person to the purported conspiracy between her and Coppins.

Another omission in the indictment is the word "corruptly."   That word is an important element, requiring that jurors believe that the defendants were conscious of their wrongdoing.   *See Arthur Andersen LLP v. United States*, 544 U.S. 696, 705-06 (2005).

As in *Dentler*, we also examine the jury instructions on the deficient charge to determine if all the relevant elements were finally provided there for jurors' consideration.   *Dentler*, 492 F.2d at 311.   Both defendants objected in the district court to the instructions, arguing that they were in effect a trial amendment to the indictment.   The specific objection was to the addition of the word "corruptly" and the phrase "another person."

The instructions on Count One were divided into several paragraphs. The introductory paragraph does not even imply that a third, much less a fourth, person was involved.

> The defendants, Moses Coppin and Tameka Bennett, are charged with conspiring to obstruct justice through evidence concealment between October 29, 2010 and October 13, 2011 by attempting to conceal and concealing objects, namely a cellular telephone memory card and telephone contents, and a firearm and

jewelry with the intent to impair the objects' availability for use in United States v. Moses Coppin, Criminal Case Number 3:1O-CR-345-K, an official proceeding.

After defining "conspiracy," the instruction stated, in different paragraphs for Coppin and for Bennett, that each defendant "and at least one other person made an agreement to commit the crime of conspiring to obstruct justice through evidence concealment," that each "knew the unlawful purpose of the agreement and joined it willfully, that is, with the intent to further the unlawful purpose," and at least one conspirator committed an overt act. There still is no suggestion that anyone other than Coppin or Bennett was involved, and no reference to persuasion.

Finally in the jury instruction both on Count One and Count Two, the district court listed the elements of Section 1512(b)(2)(B) this way:

> The crime or offense of obstruction of justice through evidence concealment occurs when a person: (1) knowingly corruptly persuades another person or knowingly engages in misleading conduct toward another person; (2) conceals objects with the intent to impair the objects' availability for use in an official proceeding; (3) knew or should have known that an official proceeding was pending or was likely to be instituted; and (4) the official proceeding was a federal proceeding.

This instruction remains silent on whether anyone besides Bennett and Coppin was involved. Further, there is no linking the corrupt persuasion of another person in the first numbered clause to the "conceals objects" phrase in the second numbered clause. In other words, the instruction does not say what anyone was being corruptly persuaded to do. The crime requires that Bennett and Coppin conspire to persuade someone other than themselves to conceal certain objects for the purpose of impairing an official proceeding. Because these instructions did not tell jurors that they must find the defendants had conspired to persuade Cambria or someone else, the omissions in Count One were not harmless. The conviction on Count One cannot stand.

*B. Aiding and Abetting the Corrupt Persuasion of Another Person to Conceal Evidence and the Corrupt Concealment of Evidence (Count 2)*

Count Two, the aiding and abetting count, charged Bennett and Coppin with violations of 18 U.S.C. § 2, § 1512(b)(2)(B), and § 1512(c)(1).  Section 2 of Title 18 criminalizes aiding and abetting the commission of a separate criminal offense.  This count then cited two substantive statutory subsections.  One was Section 1512(c)(1).  That subsection prohibits concealing an object in order to hinder its use in an official proceeding.  It differs from Section 1512(b)(2)(B) that was cited in Count One by not requiring the persuasion of another.

Count Two also cited Section 1512(b)(2)(B), just as had Count One, but the text of Count Two does not include any of the specific language relevant to that subsection.  Neither defendant made an argument in district court or here based on the citation to Section 1512(b)(2)(B) in Count Two.  We will therefore ignore that reference as well.

As with our discussion of the first count, we begin our review of this charge with the language of the indictment:  Coppin and Bennett "did, aiding and abetting one another, knowingly attempt to and did conceal objects, namely a cellular telephone memory card and telephone contents, and a firearm and jewelry with the intent to impair the objects' availability for use in" the criminal proceeding against Coppin.  The indictment then stated that these acts violated Sections 1512(b)(2)(B) and 1512(c)(1), in addition to the aiding and abetting statute, Section 2.

Other than omitting the word "corruptly," the indictment closely follows the language of the statute: "Whoever corruptly -- (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding," is guilty of the offense.  18 U.S.C. § 1512(c)(1).

Section 1512(c)(1) prohibits individual attempts to conceal evidence, while Section 2 adds the aiding and abetting component. Thus, the only element of that offense missing from the indictment is the word "corruptly." The instructions on Count Two required that jurors find the defendants corruptly violated the statute, and gave a proper definition as follows: "For a person to act 'corruptly,' they must have acted knowingly and dishonestly, with the specific intent to subvert or undermine the due administration of justice." The instruction removed any possible harm from the grand jury's failure to include the word in the indictment. *See Dentler*, 492 F.3d at 310-11.

The only objection at trial to the adequacy of Count Two's language was that the word "corruptly" was omitted. That also was the only relevant objection to the instructions on Count Two, an addition which counsel argued was effectively a trial amendment. On appeal, both defendants remain focused solely on the fact that the word "corruptly" was not in the indictment.

We agree with defense counsel that the indictment should have included the word "corruptly." *See Arthur Andersen*, 544 U.S. at 705-06. Yet the error was harmless. Defendants have never argued that they were unaware that the relevant charge under Count Two was to Section 1512(c)(1). We conclude, then, that the indictment gave each defendant sufficient notice of the crime on which they would be tried. Other than arguing the instructions on Count Two improperly added the word "corruptly," which had been omitted from the indictment, defendants have no objection to the instructions on this count. The conviction under valid instructions creates a presumption that there was no harm arising from the failure of a grand jury to charge that missing element of the necessary intent. *Dentler*, 492 F.3d at 310-11.

There was no effect on the substantial rights of the defendants because of the defects in Count Two of the indictment. We find no constitutional error, and uphold Count Two under the principles of *Dentler*.

II.    *Sufficiency of evidence on Count Two (Bennett and Coppin) and Counts Three and Five (Bennett)*

Coppin and Bennett argue that there was insufficient evidence to convict them under the first two counts, while Bennett separately challenges the sufficiency on Counts Three and Five.   The conviction of each defendant on Count One has been reversed, so the sufficiency argument as to it is moot. Count Three concerned attempting to obstruct justice, 18 U.S.C. § 1503(a), and Count Five was for being a felon in possession, 18 U.S.C. § 992(g).

If a defendant properly raises the insufficiency of the evidence in motions for judgment of acquittal, we review "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict,  . . . asking whether a rational trier of fact could have found guilt beyond a reasonable doubt." *United States v. Montes*, 602 F.3d 381, 388 (5th Cir. 2010). Proper motions were made by each defendant at the close of the Government's case-in-chief, at the close of all evidence, and again after the jury's verdict. *See* FED. R. CRIM. P. 29.

A.    *Sufficiency of Evidence, Count Two:    Aiding and Abetting Obstruction of Justice by Concealing Evidence*

Because we have reversed the convictions on Count One, those sufficiency arguments are moot.   There was less of an effort to show why the evidence was also insufficient as to Count Two, but the issue was presented.

Coppin's brief first sets out the language of Count Two of the indictment:

Beginning on or about October 29, 2010, the exact date being unknown to the Grand Jury, and continuing through October 13, 2011, in the Dallas Division of the Northern District of Texas, the defendants, Moses Coppin and Tameka Estelle Bennett, did aiding and abetting one another, knowingly attempt to and did conceal objects, namely a cellular telephone memory card and telephone contents, and a firearm and jewelry with the intent to impair the objects' availability for use in United States v. Moses Coppin, Criminal Case Number 3:10-CR-345-K, an official proceeding . . . .

Coppin then argues there was "no evidence that there was any intent to conceal the specific evidence as alleged in Counts One and Two, that being: a cellular telephone memory card and telephone contents, and a firearm and jewelry," in relation to the grand jury proceedings regarding Coppin.

Bennett's brief is similar, in that she sets out the language of Count Two, then makes arguments about which elements of the offense as charged were not proved. We will discuss each of the alleged deficiencies.

The defendants' argument that there is no evidence supporting an intent to conceal the telephone and some of its components, or the firearm and jewelry, partly relies on a legal question of whether the actions had to occur after Coppin became a suspect on a federal charge. When the aiding and abetting allegedly occurred, Coppin had just been arrested and was in jail on state charges. Count Two of the indictment requires proof of an intent to impair the not-yet-commenced federal proceedings that resulted in the conviction that we are reviewing today. Of course, the Section 1512 charges in the proceedings cannot be the relevant ones, as those counts would not exist except for efforts to impair bringing other charges. The relevant charges being hindered include the one brought for Coppin's being a felon in possession of a firearm. There was evidence that Coppin, though not yet charged, was striving to avoid having the firearm identified as his. He was worried about "the Feds" picking him up. The photos on the phone and the firearm would be evidence to show he had committed an armed robbery, which would be strong evidence that "the Feds" could and did use in the prosecution that followed.

The indictment charged both defendants with trying to impair judicial proceedings that had not yet been brought when the acts of impairment occurred. It was to prevent such proceedings from ever being brought, though, that jurors could determine was the intent driving both Bennett and Coppin. The issue of whether the defendants were trying to impair the proceedings

later brought against Coppin is a factual one, which jurors had sufficient evidence to find in the Government's favor. Our case is much different from one of the cases cited by the defendants, in which the judicial proceeding occurred two and a half years after the acts which allegedly were intended to impair that proceeding. *United States v. Shively*, 927 F.2d 804, 811-12 (5th Cir. 1991).

Coppin argues that the evidence which showed an attempt to bribe James Collins if he would accept responsibility for the firearm, identified Bennett, not him, as the briber. Coppin argues there was no evidence tying him to Bennett's actions. Jurors are entitled to make reasonable inferences from the evidence in light of the evidence of what Coppin himself did. *Coleman v. Johnson*, 132 S. Ct. 2060, 2065 (2012). Coppin not only spoke with Bennett about approaching Collins to claim ownership of the gun, he also instructed her to "clean house," which triggered Bennett's attempt to conceal evidence related to the burglary, including a second handgun later identified as being used in the burglary. Coppin's discussions with Bennett and her subsequent actions are sufficient evidence to support a finding that he conspired to conceal firearms that were used in the burglary.

Coppin also relies on defense evidence, such as the testimony that Bennett retrieved the phone from police only to get a phone number from it. Jurors were entitled to make their own findings as to the intent behind either defendant's actions if direct or circumstantial evidence existed to support such findings. *See id.* There was ample evidence as to the intent of the defendants in their various acts regarding the phone, firearms, and jewelry. From the moment Coppin was arrested, Bennett and Coppin worked in concert to thwart the possibility of judicial proceedings. After speaking with Coppin about the pending state charges, Bennett approached Collins about claiming ownership of the gun. She also attempted to conceal incriminating pictures on Coppin's

phone while talking to Coppin.  Bennett retained the stolen jewelry and at least one weapon used in the burglary and, at Coppin's instruction, actively attempted to conceal this evidence from the police.

Bennett's arguments are largely the same.  A specific argument she makes that we have not yet discussed is that the Government did not show that Bennett "intended that her actions would result in the obstruction of a specific judicial proceeding."  She cites for this point a Second Circuit case, *United States v. Desposito,* 704 F.3d 221, 230 (2d Cir. 2013).  *Desposito* simply addresses the requirement that a defendant's attempts at evidence concealment must have a nexus with a judicial proceeding.  *See id.* at 231-32.  Further, Bennett equates the not-yet-commenced federal proceedings to internal investigations of Border Patrol employees, which we held could not be the basis for a Section 1512(c)(1) prosecution.  *United States v. Ramos*, 537 F.3d 439, 462-63 (5th Cir. 2008).  The *Ramos* decision is not relevant here, as jurors could find that Bennett and Coppin were intending to impair and even prevent the bringing of the federal charges against Coppin for gun possession.

As with Coppin, there was sufficient evidence to support the verdict against Bennett on Count Two.  Bennett's attempts at concealing the evidence began upon Coppin's initial arrest, as she sought to clear the phone's memory.  These efforts continued as the federal prosecutor attempted to build the case against Coppin, which, as discussed in more detail below, culminated with her asking Collins to claim possession of the gun a second time.  Further, she maintained possession of the incriminating evidence and made active efforts to conceal it at Coppin's behest.  A rational trier of fact could have found both Bennett and Coppin guilty on the strength of this evidence.  *See Montes*, 602 F.3d at 388.

No. 12-10586

*B.    Sufficiency of Evidence, Count Three: Obstructing the Due
    Administration of Justice*

Section 1503(a) criminalizes attempts to obstruct the due administration of justice; it "was enacted to protect individuals involved in federal judicial proceedings and to prevent miscarriage[s] of justice by corrupt methods." *United States v. Williams*, 874 F.2d 968, 976 (5th Cir. 1989) (alteration in original).    To sustain a conviction for a violation of Section 1503(a), the Government must establish these three elements: "there was a pending judicial proceeding, the defendant had knowledge or notice of the pending proceeding, and the defendant acted corruptly with the specific intent to obstruct or impede the proceeding or the due administration of justice." *United States v. Neal*, 951 F.2d 630, 632 (5th Cir. 1992).    The final element can be proven by showing the defendant's endeavors had the "natural and probable effect of interfering with the due administration of justice." *United States v. Aguilar*, 515 U.S. 593, 599 (1995).

Count Three alleged that Bennett endeavored to influence Collins to obstruct justice in connection with Coppin's pending indictment.    Bennett argues that she could not have endeavored to obstruct Coppin's judicial proceeding because she attempted to bribe Collins before the grand jury returned the indictment charging him with possession of the firearm.    The argument requires our concluding that an indictment is the beginning of a judicial proceeding for purposes of Section 1503(a).    At least one circuit has held that a judicial proceeding begins upon the filing of the criminal complaint. *See United States v. Metcalf*, 435 F.2d 754, 756 (9th Cir. 1970) (stating "it is well settled that the statute is not applicable until, at the earliest, a complaint has been filed with a United States Commissioner").    Another circuit has held that "obstruction of a pending grand jury investigation is punishable under the statute." *United States v. Simmons*, 591 F.2d 206, 208 (3d Cir. 1979).    We

16

accept these interpretations.  For purposes of Section 1503(a), it is sufficient that the obstruction be of a grand jury proceeding prior to an indictment.

There is sufficient evidence to support the jury's conclusion that Bennett acted to corrupt or impede a potential grand jury investigation.  Bennett admits the following events occurred in this sequence.  Federal agents began investigating Coppin's possession of the firearm as early as November 12, 2010, and the agents contacted the United States Attorney's Office by November 15.  The Government then filed a criminal complaint against Coppin on November 16.  Coppin was arrested and entered his initial appearance on November 17.  That same day, Bennett offered Collins $1000 to claim ownership of the gun.  The timing of this endeavor creates a particularly strong nexus between Bennett's endeavor and the likelihood that it was intended to disrupt the pending grand jury investigation.  *See Aguilar*, 515 U.S. at 599.  Viewing this evidence in a light most favorable to the verdict, we find that a rational trier of fact could have found Bennett guilty of a violation of Section 1503(a) beyond a reasonable doubt. *See Montes*, 602 F.3d at 388.

*C. Sufficiency of Evidence, Count Five: Felon in Possession*

Before trial, Bennett stipulated that "[o]n April 7, 2005, Tameka Bennett was convicted . . . of a felony, that is[,] a crime punishable by more than one year in prison."  The stipulation was entered into evidence at trial without objection.  Bennett now asserts that the forgery conviction to which this stipulation was referring does not count as a one-year felony under 18 U.S.C. § 992(g).  That is because it is excluded by 18 U.S.C. § 921(20), which provides that felony offenses "relating to the regulation of business practices" do not constitute offenses for purposes of Section 992(g) under what is known as the business practices exception.

Bennett does not cite any authority that forgery falls within the business practices exception.  Bennett's stipulation at trial that she had committed a

felony punishable by more than a year in prison forecloses her ability to raise this issue on appeal. In one precedent, a defendant entered a stipulation of having a prior felony conviction. *United States v. Broadnax*, 601 F.3d 336, 346 (5th Cir. 2010). The district court never discussed whether the conviction fit within the exclusions set out under 18 U.S.C. § 921(20). We noted the language of the defendant's stipulation mirrored the language of 18 U.S.C. § 992(g), which signaled that the defendant was not only stipulating to the fact that he had committed the crime but also that the felony qualified as punishable under Section 992(g). *Id.* Bennett stipulated not only that she had committed a one-year felony but also that she had committed a felony for purposes of Section 992(g) as a matter of law.

### III. *Enhancement to Coppin's Sentence for Being a Leader or Organizer of the Criminal Activity*

Finally, Coppin argues that the district court improperly enhanced his sentence for his leadership role in the criminal activity. The United States Sentencing Guidelines provide for a two-level enhancement to the base criminal offense level "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity." U.S.S.G. § 3B1.1(c). The district court found that Coppin's role in the concealment of evidence merited this enhancement. Application of this enhancement is reviewed for clear error. *United States v. Villanueva*, 408 F.3d 193, 204 (5th Cir. 2005).

There is no merit to Coppin's argument. The phone conversations revealed that Coppin frequently gave Bennett instruction, and Bennett, in turn, would report her activities to Coppin. Based on these conversations alone, the district court did not clearly err by finding Coppin was the leader.

We VACATE the judgment of conviction and sentences as to Count One. We AFFIRM the remaining convictions. A new sentencing hearing is not required unless ordered by the district court, as each defendant received

No. 12-10586

concurrent sentences on Counts One and Two, and their sentences for Count Two were either identical to or longer than their sentences for Count One. We REMAND for entry of revised sentences for each defendant.